IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYMBERLEY BEST, | : | |
| | : | No. 4:11-cv-00896 |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| COUNTY OF NORTHUMBERLAND, | : | |
| VINNY CLAUSI, and MERLE PHILIPS | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.  (Doc. No. 6.)  This motion has been fully briefed and is now ripe for disposition.  For the reasons stated more fully herein, the Court will grant the motion, and dismiss the complaint without prejudice.  The Court will grant Plaintiff leave to amend, within twenty days, to cure the defects noted in this memorandum.

## I.     BACKGROUND

On May 11, 2011, Plaintiff Kymberley Best, initiated this action by filing a 13-count complaint against the County of Northumberland ("the County"), Vinny Clausi, and Merle Phillips.  (Doc. No. 1.)  According to her complaint,[1] Plaintiff Best had been hired as assistant solicitor for the County in January 2009 and was promoted to chief clerk in January 2010.  (Id. ¶

---

[1] In reviewing the motion to dismiss, the Court will accept Plaintiff's factual allegations as true and will "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

1

7.)  During the entirety of Plaintiff's tenure as assistant solicitor and chief clerk, Defendants

Clausi and Philips worked as county commissioners.  (Id. ¶¶  3, 4.)  On March 18, 2011, Plaintiff

was terminated.  (Id. ¶ 23.)  The events leading up to and including Plaintiff's termination form

the basis for the instant civil action.

In October of 2010, Plaintiff Best and Defendant Clausi were among several County

officials to investigate illness at the Northumberland County Courthouse.  (Id. ¶ 8.)  After

reporting that Defendant Clausi obtained a deficient air quality test, Plaintiff obtained her own

air quality tests.  (Id. ¶ 8.)  Because the results of Plaintiff's air quality tests revealed bacteria,

she recommended that all courthouse employees file workers' compensation claims.  (Id. ¶¶ 8,

9.)  According to Plaintiff, Defendant Clausi was dissatisfied with her recommendation and was

angered by her actions.  (Id.)

The October 2010 courthouse investigation revealed another hazard: the possibility that

the panes of the courthouse's glass dome would cave in.  The contractor hired to assess the dome

reported that there was a "serious probability" that the panes of the glass dome might fall

because the wooden structure supporting the dome had rotted after sustaining extensive water

damage.  (Id. ¶ 10.)  However, Defendant Clausi allegedly chose to ignore and cover up the

contractor's warning.  (Id.)  When Plaintiff discovered that one of the glass panes was hanging

downward and looked like it was going to fall, she notified maintenance, Defendant Clausi, and

the County's director of workers' compensation.  (Id.)  Defendant Clausi responded by leaving

Plaintiff a threatening voicemail message in which he called her a "witch," told her that she was

going to bankrupt the County, and instructed her to keep quiet.  (Id.)

Even after Plaintiff confronted Defendant Clausi about the voicemail message, Defendant

Clausi's intimidating and harassing behavior continued. (Id. ¶¶ 11, 12.) In October of 2010, Defendant Clausi screamed at Plaintiff in the County's administrative offices and accused her of being late. (Id. ¶ 14.) He then followed Plaintiff into her office where he continued to scream at her. (Id.) While Plaintiff remained seated at her desk, Defendant Clausi stood over her and threatened, "I can take care of you for ten cents. That's the cost of a bullet." (Id.) Plaintiff reported this incident to Joseph Picarelli, the Human Resources Director. (Id.)

In November or December of that year, Defendant Clausi again entered Plaintiff's office to threaten her. (Id. ¶ 15.) This time, he locked the door and closed the blinds. (Id.) He then pressured Plaintiff to quit her job and told her that he was a very important person who knew a lot of dangerous people. (Id.) Plaintiff felt trapped, intimidated, and threatened. (Id.)

On March 8, 2011, at a public work session held by the Northumberland County Commissioners, Defendant Clausi again screamed at Plaintiff. (Id. ¶ 16.) He also pounded his fists on the desk, kicked his chair, and threw a garbage can in Plaintiff's direction before approaching her and shaking his fists in her face while continuing to scream at her. (Id.) Fearing for her safety, Plaintiff left the meeting in tears. (Id.) Plaintiff reported this incident to District Attorney Anthony Rosini, which resulted in a state police investigation. (Id. ¶¶ 16, 17.) Plaintiff also missed work due to the emotional toll that Defendant's actions had on her. (Id. ¶ 16.) On March 11, 2011, Defendant Clausi confronted Plaintiff in her office and refused to leave when asked. (Id. ¶ 19.)

On March 15, 2011, during a public meeting of the Northumberland County Commissioners, Plaintiff proposed that the commissioners adopt a Code of Civility. (Id. ¶ 21.) Plaintiff alleges that Defendant Clausi was angered or frustrated by Plaintiff's proposal, and he

insisted that she be terminated.  (<u>Id.</u> ¶¶ 21, 22.)  Defendant Clausi had previously stated to the news media that Plaintiff should resign and that he would seek her termination.  (<u>Id.</u> ¶ 18.) Defendants Clausi and Philips both voted in favor of terminating Plaintiff's employment.  (<u>Id.</u> ¶ 23.)  Accordingly, Plaintiff Best was fired, effective March 18, 2011.  (<u>Id.</u>)  Defendants indicated that Plaintiff was terminated for failing to communicate with Defendant Clausi after she made her police complaint, for providing poor legal advice on a matter involving the sale of county-owned land, and for proposing the Code of Civility at the public meeting.  (<u>Id.</u> ¶ 24.)  Following Plaintiff's termination, two males were hired to replace her.  (<u>Id.</u> ¶ 25.)

## II.    STANDARD OF REVIEW

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  <u>Lum</u>, 361 F.3d at 221 n.3.  The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law.  <u>Markowitz v. Ne. Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated.  <u>Johnsrud v. Carter</u>, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist."  <u>Kost</u>, 1 F.3d at 183 (citations omitted).  A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906, 908 (3d Cir. 1997).  While the 12(b)(6) standard

does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'" Phillips, 515 F.3d at 231-32 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

## III.   DISCUSSION

In her complaint, Plaintiff has asserted the following causes of action: (1) a First Amendment retaliation claim raised pursuant to 42 U.S.C. § 1983 against Defendants Clausi and Phillips (Count I); (2) a violation of the Fourteenth Amendment's due process clause against all Defendants (Count II); (3) a violation of the Equal Pay Act against all Defendants (Count III); (4) a conspiracy claim raised pursuant to 42 U.S.C. § 1985 against Defendants Clausi and Phillips (Count IV); (5) a violation of the Pennsylvania Whistleblower Law, 43 P.S. § 1421 (Count V); and (6) several other state-law claims, which Plaintiff voluntarily dismissed in her brief in opposition to Defendants' motion to dismiss (Counts VI-XIII).  (Doc. No. 1; Doc. No. 15 at 1, 11.)  The Court will address the remaining claims in turn.

### A.   First Amendment Retaliation Claim (Count I)

First, Defendants move to dismiss Plaintiff's First Amendment retaliation claim raised pursuant to 42 U.S.C. § 1983.  "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v.

Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).  Defendants Clausi and Phillips contend

that Plaintiff has failed to plead sufficient facts to establish the first element of a First

Amendment retaliation claim, namely, that Plaintiff's speech was protected under the First

Amendment.  Specifically, Defendants claim that "Plaintiff has not alleged sufficient facts to

show that she was speaking as a citizen addressing matters of public concern when endorsing the

Civility Code at a public meeting."  (Doc. No. 6 ¶ 7.)

        Upon review of the complaint, the Court concludes that Plaintiff has not pleaded

sufficient facts to state a claim of First Amendment retaliation.  A public employee's speech is

not protected by the First Amendment if that speech is made within the scope of the speaker's

employment responsibilities; instead, a public employee's speech is protected only when the

speaker is speaking as a private citizen and not in an official capacity.  Garcetti v. Ceballos, 547

U.S. 410, 421 (2006) ("[W]hen public employees make statements pursuant to their official

duties, the employees are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications from employer discipline.").  Yet, even

when made outside the scope of the speaker's official duties, speech is not protected if it fails to

address a matter of public concern.  Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003).

"Speech implicates a matter of public concern if the content, form, and context establish that the

speech involves a matter of political, social, or other concern to the community."  Miller v.

Clinton Cnty., 544 F.3d 542, 548 (3d Cir. 2008) (citing Connick v. Myers, 461 U.S. 138, 146-48

(1983)).

        First, Defendants argue that Plaintiff failed to show that she was speaking as a citizen and

not as an employee within the scope of her employment.  Plaintiff has alleged that during a

6

public meeting, she proposed that the County adopt a Code of Civility, and that she was speaking in her personal capacity when she made this proposal.  The Court is satisfied, at this early stage, that Plaintiff has pleaded sufficient facts to support a finding that she was speaking as a private citizen.

Defendants next argue that Plaintiff fails to "describe or identify what the 'Code of Civility' is" and that "a common sense reading" of the complaint reveals that Plaintiff's proposed Code of Civility deals with internal County operations and private grievances.  (Doc. No. 14 at 13-14.)  The Court agrees – Plaintiff's complaint is devoid of any explanation of what the Code of Civility entails, beyond the assertion that it dealt with "governmental affairs."  Plaintiff argues, in her brief in opposition to Defendants' motion to dismiss, that her proposal addressed "the civility of county employees toward each other and the community."  (Doc. No. 15 at 6.)  However, such an explanation of the Code of Civility is absent in Plaintiff's complaint, and "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)).  Accordingly, the Court finds that Plaintiff has not alleged sufficient facts in her complaint to support an inference that her speech related to a matter of public concern, and thus Plaintiff fails to state a claim for First Amendment retaliation.

**B.      Fourteenth Amendment Due Process Violations (Count II)**

Next, Defendants move to dismiss Plaintiff's claim for violation of her liberty interest in reputation, which is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  To state a proper claim for a violation of her liberty interest in

reputation, Plaintiff must allege sufficient facts to satisfy the "stigma plus" test.  See Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 1996).  "In the public employment context, the 'stigma plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest."  Id.  "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'"  Id.

"To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements(s) (1) were made publicly and (2) were false."  Hill, 455 F.3d at 236 (citations omitted).  In order to be considered stigmatizing, the statements must "call into question plaintiff's good name, reputation, honor, or integrity . . . [or] denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession."  Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004)) (internal citations and quotation marks omitted).  In the public employment context, "charges of incompetence or inability to get along with others" do not implicate a liberty interest.  Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991).

In this case, Plaintiff alleges that Defendants created and disseminated false defamatory impressions about her in connection with her termination.  (Doc. No. 1 ¶ 33.)  Specifically, she claims that Defendant Clausi stated to various news media that Plaintiff should resign and that he would seek her termination.  (Id. ¶ 34.)  Plaintiff also claims that Defendants cited poor legal advice over a matter involving the sale of County-owned property as one of the bases for Plaintiff's termination.  (Id. ¶ 35.)

Defendants contend that Plaintiff has failed to allege sufficient facts to satisfy the "stigma" prong of the "stigma plus" test.  (Doc. No. 14 at 15-16.)  Defendants do not dispute the fact that the statements in questions were made in public; rather, Defendants argue that "publicized charges of incompetence about a public employee's work performance, like that here, are not stigmatizing as a matter of law and do not damage that employee's liberty interest." (See Doc. No. 14 at 9.)  According to Defendants, Defendant Clausi's "state[ments] to news media that Plaintiff should resign and that he would seek her termination," and Defendants statements regarding Plaintiff's "poor legal advice as one of the bases for her termination" are "comments about Plaintiff's performance as an assistant solicitor."  (Doc. No. 14 at 9-10.)

The Court finds that Defendant Clausi's alleged statements to various news media that Plaintiff should resign and that he would seek Plaintiff's termination cannot satisfy the stigma prong.  Defendant Clausi did in fact seek Plaintiff's termination when he voted to terminate her, thus the statements cannot be said to be false.  Further, the statement citing poor legal advice as one of the bases for termination concerns only Plaintiff's competency and job performance, and is not the type of statement that calls into question Plaintiff's good name or integrity "in such a fashion as to effectively put a significant roadblock in [her] continued ability to practice [her] profession."  See Patterson, 370 F.3d at 330.  Accordingly, Plaintiff has not pleaded a valid due process claim, and the Court will grant Defendant's motion to dismiss Plaintiff's claim for violation of her liberty interest in reputation.

### C.      Violation of the Equal Pay Act (Count III)

Next, Defendants move to dismiss Plaintiff's claim for a violation of the Equal Pay Act. The Equal Pay Act prohibits employers from discriminating "between employees on the basis of

sex by paying wages to employees . . . at a rate less than the rate at which [they] pay[] wages to employees of the opposite sex . . . for equal work." 29 U.S.C. § 206(d)(1).  Claims based on the Equal Pay Act follow a two-step burden-shifting approach:  "[t]he plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing 'equal work' – work of substantially equal skill, effort and responsibility, under similar working conditions."  Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000).  After the plaintiff establishes a prima facie case, "[t]he burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act."  Id.  Thus, the Equal Pay Act "prohibits differential pay for men and women when performing equal work 'except when such payment is made pursuant to' one of the four affirmative defenses."  Id. (quoting 29 U.S.C. § 206(d)(1)).  However, at the motion to dismiss stage, the Court will only determine whether Plaintiff has established a prima facie case for a violation of the Equal Pay Act.

Although Plaintiff claims that she "was paid a lower wage than members of the opposite sex, performing equal work," the facts that Plaintiff has pleaded belie this assertion.  First, Plaintiff alleges that after she and Joe Picarelli, a male colleague, requested a raise, Plaintiff's request was denied while Picarelli's was granted.  (Doc. No. 1 ¶ 39.)  According to Plaintiff's complaint, Picarelli was employed as the Human Relations Director, whereas Plaintiff worked as chief clerk and assistant solicitor.  (Id. ¶ 39, 40.)  Based on Plaintiff's own facts as pleaded in her complaint, she and Picarelli held different employment positions.  As the Third Circuit has explained, "[t]he crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical."  Brobst

v. Columbus Servs. Int'l, 761 F.2d 148, 156 (3d Cir. 1985).  Plaintiff has not alleged that these positions share a "common core" of tasks.  Furthermore, Plaintiff does not allege in her complaint that Picarelli earned more than she, either before or after the County granted his raise request.  Plaintiff's bald assertion that she was paid a lower wage than members of the opposite sex performing equal work, without specifying the work performed, or the wage earned, is not sufficient to "raise a right to relief above the speculative level."  See Twombly, 550 U.S. at 555.

Additionally, Plaintiff claims that after she was terminated, "Defendants filled Plaintiffs [sic] positions with two men" and "compensat[ed] them with a higher combined annual salary for fewer hours."  (Id.)  Specifically, according to Plaintiff, Defendants hired Gary Steffen as chief clerk and James Rosini as assistant solicitor.  (Id. ¶ 25.)  Although Plaintiff claims that the combined salaries of Steffen and Rosini exceeded Plaintiff's annual salary, the simple fact that two individuals were hired to replace her distinguishes the circumstances and working conditions of their employment from that of Plaintiff's.  Because Plaintiff has failed to plead sufficient facts to establish a prima facie case for violation of the Equal Pay Act, the Court will grant Defendant's motion to dismiss this claim.

### D.    Civil Rights Conspiracy Claim (Count IV)

Next, Defendants move to dismiss Plaintiff's claim for conspiracy under 42 U.S.C. § 1985(3) against Defendants Clausi and Phillips.  To state a claim under § 1985(3), Plaintiff must allege that: "(1) two or more persons conspire[d] to deprive [her] of the equal protection of the law; (2) one or more of the conspirators perform[ed] or cause[d] to be performed any overt act in furtherance of the conspiracy; and (3) that overt act injure[d] [P]laintiff in [her] person or property or deprive[d] [her] of any right or privilege of a citizen of the United States."  Barnes

Found. v. Twp. Of Lower Merion, 242 F.3d 151, 162 (3d Cir. 2001).  To allege a conspiracy,

Plaintiff must "expressly allege an agreement or make averments of communication,

consultation, cooperation, or command from which such an agreement can be inferred."

Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992).

    Defendants argue that Defendants Clausi and Phillips cannot be conspirators in their roles

as County Commissioners because under the intracorporate conspiracy doctrine, "a

governmental entity and its agents cannot, as a matter of law, conspire because they are

considered one."  (Doc. No. 14 at 18.)  The intracorporate conspiracy doctrine provides that "an

entity cannot conspire with one who acts as its agent."  Gen. Refractories Co. v. Fireman's Fund

Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (citing Heffernan v. Hunter, 189 F.3d 405, 413 (3d

Cir. 1999)).  However, the Third Circuit has held that individuals who are agents and of the same

principal can form a conspiracy in violation of § 1985(3).  Novotny v. Great Am. Fed. Sav. &

Loan Assn., 584 F.2d 1235, 1262 (3d Cir.1978), vacated on other grounds, 442 U.S. 366 (1979)

("[I]ndividuals who are directors and officers of a corporation can form a conspiracy in violation

of s 1985(3) . . . .").  In this case, Plaintiff does not allege that Defendants Clausi or Phillips

conspired with the County – rather, Plaintiff alleges that Defendants Clausi and Phillips

conspired with each other.  (See Doc. No. 1 ¶¶ 41-44.)  Thus, the intracorporate conspiracy

doctrine would not bar Plaintiff's § 1985(3) claim.

    Nonetheless, Plaintiff fails to state a claim for conspiracy under § 1985(3).  Plaintiff

alleges that both Defendants "acted together in voting to terminate" her, and that both

Defendants were motivated by a "class based discriminatory animus."  (Id. ¶¶ 42-43.)  However,

while Plaintiff's allegations may support an inference that both Defendants independently

intended to deprive Plaintiff of the equal protection of the law, Plaintiff has not alleged that Defendants Clausi and Phillips "acted with a single plan, the general scope and nature of which was known to each conspirator." Green v. Benden, 281 F.3d 661, 665 (7th Cir. 2002). Thus, Plaintiff has failed to state a claim for conspiracy under § 1985(3).

> E.      Violation of the Pennsylvania Whistleblower Law (Count V)

Defendants move to dismiss Plaintiff's claim under the Pennsylvania Whistleblower Law, 43 P.S. § 1421. The Court need not address the merits of this claim. Pursuant to 28 U.S.C. § 1367, the Court may decline to exercise supplemental jurisdiction over a claim if the Court has dismissed all claims against Defendants over which it has original jurisdiction. In the pending action, the Court has found that the federal claims alleged against the Defendants are subject to dismissal.

The decision whether to decline to exercise supplemental jurisdiction over Plaintiff's supplemental state claim is left to the sound discretion of the Court, which focuses on whether the dismissal of the pendent claims best serves the principles of judicial economy, convenience, fairness and comity. Annulli v. Panikkar, 200 F.3d 189 (3d Cir. 1999); Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). Comity favors allowing the state court to hear Plaintiff's Pennsylvania Whistleblower Law claim. Further, any fairness considerations with respect to the statute of limitations are cured by 28 U.S.C. § 1367(d), which ensures that Plaintiff's Pennsylvania Whistleblower Law claim will not be considered time-barred so long as she reasserts them in state court within 30 days of the dismissal of this action. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's Pennsylvania Whistleblower Law claim. The Court will, however, reevaluate the Pennsylvania Whistleblower Law claim if

Plaintiff is able to successfully amend her complaint.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion to dismiss and will dismiss the complaint without prejudice.  The Court will grant Plaintiff leave to amend, within twenty days, to provide the necessary factual allegations to support the claims raised in his complaint.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KYMBERLEY BEST,** | **:** | |
| | **:** | **Civil Action No. 4:11-cv-00896** |
| **Plaintiff** | **:** | |
| | **:** | **(Chief Judge Kane)** |
| **v.** | **:** | |
| | **:** | |
| **COUNTY OF NORTHUMBERLAND,** | **:** | |
| **VINNY CLAUSI, and MERLE PHILIPS** | **:** | |
| | **:** | |
| **Defendants** | **:** | |

## <u>ORDER</u>

**AND NOW**, on this 30th day of November 2011, **IT IS HEREBY ORDERED** that

Defendants' motion to dismiss (Doc. No. 6) is **GRANTED**, and Plaintiff's complaint is

**DISMISSED WITHOUT PREJUDICE**.  Plaintiff may file an amended complaint within

twenty days from the date of this order.

  S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania