IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLEY BEST, | : | CIVIL ACTION NO. **4:CV-11-0896** |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| COUNTY OF | : | |
| NORTHUMBERLAND, *et al.,* | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background**.

On May 11, 2011, Plaintiff, Kymberley Best, filed through counsel a civil rights action pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985. Plaintiff also raised state law claims. Plaintiff's original Complaint consisted of 14 pages. (**Doc. 1**). Plaintiff resides at PO Box 88, Sunbury, Northumberland County, Pennsylvania. Plaintiff filed her original Complaint against: Defendant County of Northumberland, a government entity, business address 399 South 5th Street, Sunbury, Northumberland County, Pennsylvania; Defendant Vinny Clausi, Northumberland County Commissioner, whom Plaintiff sues in his official and individual capacities; and Defendant Merle Phillips, Northumberland County Commissioner, also sued in his individual and official capacities. Plaintiff states that this Court has jurisdiction over her federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and over state law claims pursuant to §1376. Plaintiff further alleges that venue is proper in the Middle District Pennsylvania under 28 U.S.C. § 1391.

After Defendants were served with Plaintiff's original Complaint, on July 26, 2011, they jointly filed a Motion to Dismiss.  (Doc. 6).  Defendants' Motion was briefed.  On November 30, 2011, the Court issued a Memorandum and Order and granted Defendants' Motion to Dismiss.  Plaintiff's original Complaint was then dismissed without prejudice to file an amended Complaint within 20 days.  (Doc. 21).

On December 19, 2011, Plaintiff filed her Amended Complaint.  (Doc. 22).   Plaintiff again named as Defendants the County of  Northumberland, Northumberland County Commissioner Vinny Clausi, and Northumberland County Commissioner Merle Phillips.  Plaintiff sues Defendants Clausi and Phillips  in their official and individual capacities.  Plaintiff attached an Exhibit to her Amended Complaint, namely a copy of  Northumberland County's Code of Civility.

On January 16, 2012, Defendants jointly filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).  (**Doc. 26**).  Defendants' motion consists of nine (9) pages with an attached exhibit, namely a copy of Plaintiff 's Amended Complaint.  Defendants seek to dismiss all six counts of Plaintiff's Amended Complaint as well as Plaintiff's claims for punitive damages against them.   On January 30, 2012, Defendants submitted a brief in support of their Motion to Dismiss the Amended Complaint with attached exhibits consisting of case law.  (Doc. 31).  On February 10, 2012, Plaintiff submitted a brief in opposition to Defendants' Motion to Dismiss the Amended Complaint.  (Doc. 32).   Plaintiff attached an Exhibit to her opposition brief, namely a copy of Northumberland County's Code of Civility.  The Court referred Defendants' ripe Motion to

Dismiss to the undersigned for issuance of a Report and Recommendation. (Doc. 34).

## II.  Allegations of Amended Complaint (Doc. 22).

Plaintiff was hired as the Northumberland County assistant solicitor in January 2009 at a salary of $20, 543.  She was promoted to chief clerk, in addition to assistant solicitor, in January 2010 at a combined salary of $47,158.   (Doc. 22, ¶ 7).

Plaintiff alleges that in October 2010 county officials, including herself and Defendant Clausi, investigated illnesses in the Northumberland County Office of Register of Wills and Recorder of Deeds in the Northumberland County Courthouse.  Plaintiff alleges that Defendant Clausi obtained a deficient air quality test in the County Courthouse, and that she reported his wrongdoing and obtained her own "proper air quality tests which identified bacteria." (*Id.*,¶ 8).  Plaintiff avers that as a result of the investigation, she recommended that "all the Courthouse  employees file workers' compensation claims in order to protect their rights." (*Id.,* ¶ 9). Plaintiff alleges that her actions angered Defendant  Clausi, and that he was not satisfied with her recommendation.  Plaintiff also claims that, as part of the investigation, extensive damage to the glass dome of the courthouse was found, and that Defendant Clausi "chose to ignore and cover up the contractor's warning that there was a serious probability that the glass panes may fall due to the rotted supporting wooden structure." (*Id.*, ¶10). Plaintiff claims that after one of the panes began hanging downward, she called maintenance, Defendant Clausi, and the county workers' compensation director, but Defendant Clausi responded by leaving her "a threatening voice mail . . . in which he told her to keep quiet, that she was going to bankrupt the county, and caller her a witch." (*Id.*).

3

Plaintiff avers that she confronted Defendant Clausi regarding the voice mail and advised him to address the issue with the structure.  Plaintiff further avers that "Defendant Clausi engaged in continuous and pervasive conduct intended to harass and intimidate women in the Northumberland County workplace." and that the Defendant County was aware of these actions and refused to do anything about it.  (*Id.*, ¶'s 11-13).

Plaintiff claims that in October 2010 Defendant Clausi screamed at her  in the County administrative offices and accused her of being late.  Plaintiff avers that Defendant Clausi followed her to her desk and continued to scream at her and said: "Go ahead and sue me.  I can take care of you for ten cents.  That's the cost of a bullet." Plaintiff states that she reported the incident to the County Human Resources Director. (*Id.,* ¶ 14).  Plaintiff further claims that in November and December of 2010, Defendant Clausi "entered Plaintiff's office, closed the blinds, locked her door, pressured her to quit her job, told her that he was a very important person and that he knew a lot of dangerous people." (*Id.,* ¶ 15).  Plaintiff avers that she felt extremely "intimidated, trapped, and threatened by this behavior." (*Id.*).

Plaintiff claims that on March 8, 2011, the County Commissioners held a public work session and that Defendant Clause "became enraged, screamed at Plaintiff, physically intimidated Plaintiff by kicking his chair and throwing a garbage can in her direction, pounded his fists on the desk, forcefully approached Plaintiff and shook his fist in her face while screaming loudly." (*Id.,* ¶ 16).  Plaintiff avers that she "felt physically threatened and afraid for her safety . . . was forced to leave the meeting in tears . . . [and] missed work due

to the emotional toll Defendant Clausi's actions had on her." Plaintiff avers that she reported this conduct to DA Anthony Rosini, and that the state police were directed to investigate. (*Id.*, ¶'s 16-17).

Plaintiff alleges that Defendant Clausi repeatedly told news media that Plaintiff should resign and that he would seek her termination. (*Id.*, ¶ 18).

Additionally, Plaintiff avers that Defendant Clausi repeatedly informed the other County Commissioners and the County department heads that she was engaging in sexual relations with Attorney Timothy Bowers on county time. (*Id.*, ¶ 19).

Plaintiff alleges that on March 11, 2011 Defendant Clausi entered her office and "addressed her in a raised, hostile, and intimidating manner." Plaintiff further alleges that she was forced to retreat from her own office after Defendant Clausi refused to leave. (*Id.*, ¶ 20). Plaintiff alleges further intimidating, threatening and demeaning conduct by Defendant Clausi including: "deliberately and violently knocking papers off her conference table; following her around the office; and commenting on her clothing and hair." (*Id.*, ¶ 21).

Finally, Plaintiff avers that during a March 15, 2011 public meeting of the Northumberland County Commissioners, Plaintiff urged the commissioners to adopt a Code of Civility and, that Defendant Clausi was angered by this proposal. (*Id.*, ¶ 22). Plaintiff alleges that she acted as a private citizen in proposing the Code of Civility during the public question and comment time allotted at the meeting. (*Id.*, ¶ 23). Plaintiff avers that she, as a private citizen, proposed the Code of Civility to restore the public image of the County,

increase the effectiveness of local government, and avoid costly law suits in the future. (*Id.*, ¶ 24).   Plaintiff refers to her Exhibit 1 attached to her Amended Complaint, a copy of the County's the Code of Civility.

Plaintiff further avers that during the March 15, 2011 public meeting of the Northumberland County Commissioners, Defendant Clausi again urged for the firing of Plaintiff.  (*Id.*, ¶ 25).

Plaintiff further avers that at the meeting, Defendants Clausi and Phillips voted to terminate her employment and that she was fired effective March 18, 2011. (*Id.*, ¶ 26). Plaintiff claims Defendants cited the following reasons for her termination: "failing to have verbal communication with Defendant Clausi after she made the police complaint, poor legal advice over a matter involving the sale of county owned land, and raising the proposed code of civility at a public meeting." (*Id.*, ¶ 27).

Finally, Plaintiff alleges that "Defendants hired Gary Steffen, a male, as chief clerk at a salary of $48,573 and James Rosini, a male, as assistant solicitor at a salary of $33,133." (*Id.*, ¶ 28).

In Count I of the Amended Complaint, Plaintiff claims that  Defendants Clausi and Phillips violated her First Amendment free speech right, in her personal capacity as a private citizen regarding governmental affairs of public interest, during the public comment portion of a public County Commissioners' meeting by retaliating against her for her proposal that the County endorse a Code of Civility.   Plaintiff avers that Defendant Clausi expressed his anger and frustration over her proposal that the County adopt a Code of Civility, and that

6

Defendants cited her proposal as a reason for her termination.  (*Id.*, ¶'s 31-33).  Plaintiff 's

Count I claim is brought under §1983.

In Count II, Plaintiff claims, that all three Defendants violated her Fourteenth

Amendment Due Process liberty interest in her reputation by "creat[ion] and dissemina[tion]

[of] false defamatory impressions about Plaintiff in connection with her termination,

including that she was engaging in sexual relations with Attorney Timothy Bowers on county

time." (*Id.*, ¶'s 35-36).  Plaintiff also claims that Defendants Clausi and Phillips made false

statements which harmed her reputation, including their contention that she gave them poor

legal advice regarding the sale of county property, and that Defendant Clausi told various

news media that she should resign and that he would seek her termination.  (*Id.*, ¶'s 37-39).

In Count III, Plaintiff claims that all Defendants violated the Equal Pay Act of 1963

("EPA") by paying her two successors, males, at a higher pay rate to perform the same tasks.

(*Id.*, ¶'s 41-43). Plaintiff also claims that she shared several tasks with  the County Human

Relations Director Joe Picarelli, that they both had to work in excess of 40 hours per week

and, that Picarelli was given an $8000 raise.  Plaintiff states that she was denied a raise and

only received a cost of living increase.  (*Id.*, ¶' 44-45).  Further, Plaintiff claims that at the

time she was terminated, she had an annual salary as chief clerk and assistant solicitor of

$71,000, and that Defendants filled her positions with two men, compensating them with a

higher combined annual salary for fewer hours.  (*Id.*, ¶ 46).

In Count IV,  Plaintiff claims that Defendants Clausi and Phillips engaged in a

conspiracy, under 42 U.S.C. § 1985, and conspired to fire her because she is a female.

Plaintiff avers that Defendants acted together in voting to terminate her and that their actions were motivated by a class based discriminatory animus since she is a female.  (*Id.*, ¶ 's 48-50).    As a result of Defendants' conduct,  Plaintiff states that she "has been defamed and suffered a deprivation of her First and Fourteenth Amendment rights." (*Id.*, ¶ 51).

In Count V, Plaintiff alleges that all Defendants violated her rights under Pennsylvania Whistleblower Law ("PWL"), 43 P.S. § 1421, for her report regarding Defendant Clausi's wrongdoing and waste, including that Clausi obtained a deficient air quality test, that Clausi ignored the dangerous glass dome, and that she was the "victim of his harassing, intimidating, discriminatory behavior, and inconsistent discipline policies." (*Id.*, ¶ 54). Plaintiff states that she made a good faith report of Clausi's wrongdoing and waste to the Human Resources Director, the state police, Defendant Clausi, to President Judge, the County Chairman, and former Commissioner Masser. (*Id.*, ¶ 55).    In response to Plaintiff's reports, Plaintiff alleges that Defendants "discharged, threatened, discriminated, and retaliated against Plaintiff." (*Id.*, ¶ 56).

In her final claim, Count VI, Plaintiff alleges  that all three Defendants wrongfully terminated her in violation of public policy, after she, as a private citizen, proposed a County Code of Civility at a public comment session at a public meeting, involving a matter of free speech aimed at achieving the betterment of local governance and the County at large.

As relief in Counts I, II & IV,  Plaintiff requests compensatory and punitive damages against Defendants.  As relief in Counts III, V & VI,  Plaintiff requests only compensatory

damages against Defendants.   Further, in Count V, Plaintiff requests reinstatement to her

County job, payment of back wages, damages, and costs of litigation, including attorney

fees.

**III.  Motion to Dismiss Standard.**

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the

Court stated:

> The Third Circuit Court of Appeals recently set out the
> appropriate standard applicable to a motion to dismiss in light
> of the United States Supreme Court's decisions *Bell Atlantic
> Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal, --
> - U.S. ----,* 129 S.Ct. 1937 (2009).  "[T]o survive a motion to
> dismiss, a complaint must contain sufficient factual matter,
> accepted as true to 'state a claim that relief is plausible on its
> face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at
> 570). The Court emphasized that "only a complaint that states a
> plausible claim for relief survives a motion to dismiss." *Id.* at
> 1950. Moreover, it continued, "[d]etermining whether a
> complaint states a plausible claim for relief will ... be a context-
> specific task that requires the reviewing court to draw on its
> judicial experience and common sense." *Id.* (citation omitted).
> *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The
> Circuit Court discussed the effects of *Twombly* and *Iqbal* in
> detail and provided a road map for district courts presented
> with a motion to dismiss for failure to state a claim in a case
> filed just a week before *McTernan, Fowler v. UPMC Shadyside,*
> 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. [ *Iqbal,*
> 129 S.Ct. at 1949.] Second, a District Court must then
> determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for
> relief." *Id.* at 1950. In other words, a complaint must do more

than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " Guirguis v. Movers Specialty Services, Inc., No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly,* 550 U.S. at 555) (not precedential).

## IV. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).[1]  See also  *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362

---

[1]Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

(1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id*. Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

With the above principles in mind, the Defendants' Motion to Dismiss will now be discussed.

**V.  Discussion.**

*1. First Amendment Retaliation*

In Count I of her Amended Complaint, Plaintiff asserts a First Amendment retaliation claim against Defendants Clausi and Phillips under §1983.  Plaintiff alleges that she  proposed a County Code of Civility as a private citizen during the public question and comment time of the March 15, 2011 Commissioner's meeting, a time designed for the public to bring issues of

concern to the Commissioners' attention.   Thus, Plaintiff's First Amendment retaliation claim is

based upon her free speech right.   Specifically, Plaintiff avers that:

> At the time of the March 15, 2011 meeting, Northumberland
> County was beset with poor employer/employee relations
> thatwere resulting in costly law suits due to arbitrary
> terminations and in bad press for the County.   Plaintiff as a
> private citizen,  proposed the Code of Civility as a way to
> restore the public  image of the County government, increase
> the effectiveness of  local government, and avoid costly law suits
> in the future.

(Doc. 22, p. 5).  Plaintiff referred to her Doc. 22, Exhibit 1, Code of Civility.

In her opposition brief, Plaintiff states  that she has now sufficiently pled the elements

necessary for a prima facie case of First Amendment Retaliation, including facts to prove that her

speech was protected.  Plaintiff states that she was speaking, as a private citizen, on a matter of

public concern when she proposed a Code of Civility during the public comment period of the

County Commissioners' meeting, and that she spoke to address bad press, law suits and

additional costs to the County. (Doc. 32, p. 7).   Plaintiff states that in her proposed Code of

Civility, which she attached to her Amended Complaint (Doc. 22) as Exhibit 1, she addressed

"the civility of County employees toward each other and the community and the effect on the

County as a  whole, "subjects that clearly implicate political, social or issues of other concern to

the community." (Doc. 32, p. 7).  Plaintiff further alleges that all of her speech took place in a

public setting, and that she was a private citizen when she made the statements.

Defendants argue that Count I of the Amended Complaint should be dismissed because

Plaintiff has not alleged sufficient facts to show she was speaking as a citizen addressing matters

of public concern regarding her proposal of the Code of Civility at the Commissioners' public meeting. Defendants assert that Count I should be dismissed since "Plaintiff was not speaking as a private citizen during the County's public work session because her official capacity with the County required her to introduce policies like the Code of Civility." (Doc. 31, p. 15). As mentioned, Plaintiff has now attached a copy of her proposed Code of Civility to her Amended Complaint. Defendants further argue that even if Plaintiff's speech was related to a matter of public concern "other courts examining speech related to the 'reputation, morale, and level of service provided by [an] institution' have ruled that such matters are not a public concern." (*Id.*, p. 16). Defendants cite to several cases and have attached two of the cases to their brief as Exhibit C. Additionally, Defendants maintain that Plaintiff proposed the Code of Civility "so that [she] could complain about her personal issues with Defendant Clausi in a public forum." (*Id.*, p. 17). Defendants conclude that Count I of the Amended Complaint should be dismissed "because Plaintiff believed her job duties with the County included the drafting [of] the Code of Civility and she should not be able to hide behind the First Amendment where such speech was created to address her private grievances with Defendant Clausi in a public forum." (*Id.*). Thus, in their Motion to Dismiss the Amended Complaint, Defendants contend that Count I should be dismissed in its entirety because sufficient facts have not been alleged that define the Code of Civility as a matter of Public Concern.

In order to proceed on her § 1983 First Amendment retaliation claim, Plaintiff must show that: (1) Plaintiff engaged in activity protected by the First Amendment; (2) the government-in this case, the County Commissioners-responded with retaliatory action sufficient to deter a

13

person of ordinary firmness from exercising his or her rights; and (3) the protected activity was

the cause of the retaliatory action. *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267

(3d Cir.2007); *Hill v. Borough of Kutztown,* 455 F.3d 225, 241 (3d Cir.2006).

> The Third Circuit has opined that:

>> [i]n order to determine if a public employer's
>> termination of an employee violates the
>> constitutional guarantee of free speech we must
>> 'balance between the interest of the [employee], as a
>> citizen, in commenting upon matters of public
>> concern and the interest of the [public employer], in
>> promoting the efficiency of the public services it
>> performs through its employee.

*Miller v. Clinton County*, 544 F.3d 542, 547-48 (3d Cir. 2008) (quoting *Pickering v. Bd. of Educ.,*

391 U.S. 563, 568 (1968).

> The *Miller* Court further stated that in evaluating the statements made by the employee,

the Court needs to consider the context in which those statements are made and may not

"cherry pick something that may impact the public while ignoring the manner and context in

which that statement was made or that public concern expressed.  Our inquiry must also

consider the form and circumstance of the speech in question." *(Id.* at 550).

> In *Mincy v. Chmielewski*, 2007 WL 707344, *5-*6 (M.D. Pa.), the Court stated:

> Retaliation for expressive activities can infringe upon an individual's rights under the
> First Amendment. *See Allah v. Seiverling,* 229 F.3d 220, 224-25 (3d Cir.2000). To prevail
> on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was
> engaged in protected activity; (2) that he suffered an "adverse action" by
> government officials; and (3) that there is "a causal link between the exercise
> of his constitutional rights and the adverse action taken against him." *Rauser v.
> Horn,* 241 F.3d 330 (3d Cir.2001) (quoting *Allah,* 229 F.3d at 225).

14

"As a threshold matter, a [plaintiff] in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser,* 241 F.3d at 333; *see also, Jerry v. Williamson,* 2006 WL 3741840, 1 (3d Cir.2006).

In *O'Connell v. Sobina,* 2008 WL 144199, *11 (W.D. Pa.), the Court stated "merely alleging the fact of retaliation is insufficient."

The *O'Connell* Court also stated:

> If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. *Mt. Healthy,* 429 U.S. at 287.

*Id.; see also Fortune v. Basemore,* 2008 WL 4525373, *4-*5 (W. D. Pa.)("It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution."); *Sims v. Piazza,* 2009 WL 3147800, *24 (M.D. Pa.)(citing *Rauser v. Horn,* 241 F.3d 333-34 (3d Cir.2001)).

Thus, Plaintiff must show that the alleged retaliatory conduct, *i.e.* her termination,  by the Defendant County Commissioners  was  related to her engaging in constitutionally-protected conduct, *i.e.* proposing the Code of Civility.

In *Alexander v. Forr*, 2006 WL 2796412 at *22 (M.D. Pa.), the Court stated:

> [I]n establishing the elements of a First Amendment claim of retaliation, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. *Crawford-El v. Britton,* 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (internal citations omitted).

Moreover, as the *Mincy* Court stated, to succeed on a First Amendment retaliation claim, a Plaintiff must show that the action by state officials was sufficiently "adverse," that is "they

15

would be 'sufficient to deter a person of ordinary firmness from exercising his First Amendment

rights.'"   2007 WL 707344,*6.

It is not disputed that Plaintiff, as an assistant County solicitor and as chief clerk,  was a

public employee during all relevant times of this case.   In *Cindrich v. Fisher*, 341 Fed. Appx.

780, 786 (3d Cir. 2009), the Court stated:

> "A public employee has a constitutional right to speak on matters of
> public concern without fear of retaliation." *Baldassare v. New Jersey,* 250
> F.3d 188, 194 (3d Cir.2001). To prevail on a First Amendment retaliation
> claim, a public employee must first show that her activity was protected by
> the First Amendment. This is an issue of law. To warrant First
> Amendment protection, an employee must speak "as a citizen upon
> matters of public concern," not "as an employee upon matters only of
> personal interest." *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct.
> 1684, 75 L.Ed.2d 708 (1983); *see Sanguigni v. Pittsburgh Bd. of Pub.
> Educ.,* 968 F.2d 393, 399-400 (3d Cir.1992). In *Garcetti,* the Court
> clarified that, even if an employee's speech touches on a matter of public
> concern, it is not protected speech "as a citizen" if it was made pursuant
> to the employee's official duties. 547 U.S. at 421, 126 S.Ct. 1951; *see
> Gorum v. Sessoms,* 561 F.3d 179, 185 (3d Cir.2009); *Foraker v. Chaffinch,*
> 501 F.3d 231, 239 (3d Cir.2007); *Hill v. Borough of Kutztown,* 455 F.3d
> 225, 242 (3d Cir.2006). It may, of course, be protected by
> whistleblower or employment discrimination statutes.

The Court in *Wise v. PA Dept. of Transp*., 2010 WL 3809858, *7-*8 (W.D. Pa. 9-23-10),

further elaborated as follows:

> In *Connick v. Meyers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983),
> the Supreme Court acknowledged the government's interest in regulating
> speech of its employees in order to promote "efficiency and integrity in
> the discharge of official duties, and [in maintaining] proper discipline in the
> public service." *Connick,* 461 U.S. at 150-51. Given the significant
> competing interests, courts must balance the public employee's
> constitutionally protected interest to speak about matters of public concern
> against the interests of the government employer. *Pickering v. Bd. of Educ.,*
> 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

To determine whether a public employee's protected speech outweighs the government's interest in regulating such speech, the Court of Appeals for the Third Circuit adheres to a three-part balancing test: (1) the employee must show his speech was constitutionally protected; (2) the plaintiff must show the protected activity was a substantial or motivating factor in the alleged retaliatory action; and (3) the defendant may defeat the plaintiff's claim by demonstrating by a preponderance of the evidence that the same retaliatory action would have been taken absent the protected conduct. *Watters v. City of Phila.,* 55 F.3d 886, 892 (3d Cir.1995).

Whether the speech was constitutionally protected turns on two requirements. The speech must relate to a matter of public concern. *Watters,* 55 F.3d t 892. Determining whether speech is a matter of public concern is a question of law which requires examination of the record in total-considering the content, form, and context of the speech. *See Connick,* 461 U.S. at 147-48 n. 7. Public concerns relate to any matter of political, social, or other concern to the community. *Brennan v. Norton,* 350 F.3d 399, 412 (3d Cir.2003). Speech involving matters of public concern must enrich or provide some value to the community. *Id.* at 413. Furthermore, speech of a purely personal nature will not qualify as a matter of public concern. *Connick,* 461 U.S. at 147; *Brennan,* 350 F.3d at 412. The Supreme Court has recognized speech motivated by a private concern may qualify as protected speech if it also addresses a matter of public concern. *Rankin,* 483 U.S. at 387 n. 11. If the speech related to a matter of public concern, the plaintiff must show the public interest advanced by the speech was not outweighed by any injury the speech could cause to the interest of the state employer in promoting the efficiency of public services. *Watters,* 55 F.3d at 892; *Waters v. Churchill,* 511 U.S. 661, 686, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

The second prong is composed of two separate elements. *Wardle v. Cnty. of Montgomery,* No. 05-3808, 2006 WL 2171976, at *6 (E.D.Pa. July 28, 2006). First, the threshold deterrence test requires the fact-finder to determine the alleged retaliatory action was punitive, such that it would deter a person of ordinary firmness from engaging in protected speech. *See McKee v. Hart,* 436 F.3d 165, 170 (3d Cir.2006); *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000); *Wardle,* 2006 WL 2171976, at *6. Second, the fact-finder must be persuaded a causal connection exists between the protected speech and the alleged punitive action. *Wardle,* 2006 WL 2171976, at *6; *see McKee,* 436 F.3d at 169-71. The alleged retaliation must be more than de minimis. *McKee,* 436 F.3d at 170. The Supreme Court noted that failing to hold a

> birthday party for a public employee as punishment for exercising
> protected speech could be considered a retaliatory act for purposes
> of satisfying the second prong. *Ratan,* 497 U.S. at 76 n. 8 (citing
> *Ratan v. Republican Party of Illinois,* 868 F.2d 943, 954 n. 4 (7th
> Cir.1989)). The Court of Appeals for the Third Circuit has
> acknowledged acts which are de minimis individually may be
> sufficiently actionable when viewed as a whole. *Suppan,* 203 F.3d at 235.

*See also Schlarp v. Dern*, 610 F. Supp. 2d 450, 464-65 (W.D. Pa. 2009).

Further, Plaintiff must "identify specific matters of public concern addressed by specific speech." *Cindrich*, 341 Fed. Appx. at 787. In *Cindrich*, the Court relying on *Connick,* stated that the Supreme Court separated "speech on matters of public concern from speech relating to the employee's private interests." *Id*. In *Schlarp v. Dern*, 610 F. Supp. 2d at 465, the Court stated that the "'as a citizen' inquiry presents a mixed question of law and fact. The 'public concern' and 'balancing tests' present questions of law for the court to decide." (Citations omitted).

In *Beckinger v. Twp. of Elizabeth*, 697 F. Supp. 2d 610, 627 (W.D. Pa. 2010), the Court stated:

> In *Garcetti [Garcetti v. Cebalos*, 547 U.S. 410 (2006)*],* the Supreme Court
> clarified the standard that a court should use to determine whether speech of a
> public employee is protected under the First Amendment. First the court must
> determine whether the employee spoke both (1) as a citizen; and (2) on a matter
> of public concern. *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951 (citing *Pickering,* 391
> U.S. at 568, 88 S.Ct. 1731, 88 S.Ct. 1731). If the answer to either question is no,
> the employee has no First Amendment claim. *Id.* If the answer to both questions
> is yes, then the possibility of a First Amendment claim arises. *Id.* The question
> becomes whether the relevant government entity had an adequate justification
> for treating the employee differently from any other member of the general
> public. *Id.* "When a citizen enters government service, the citizen by necessity
> must accept certain limitations on his or her freedom." *Id.* The Court in *Garcetti*
> made clear that speech made "pursuant to official duties" does not warrant the
> constitutional protection of speech made pursuant to an individual's status "as a

citizen." *Id.* at 421, 126 S.Ct. 1951.Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

> *Id.* at 421-22, 126 S.Ct. 19.

In *Wise,* the Court noted:

> In *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), the Supreme Court held even when a public employee's speech relates to a matter of public concern, the speech may not be constitutionally protected if it was made in furtherance of the public employee's official duties. *Id.* at 1960 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

2010 WL 3809858, *9, n. 2.

Recently, in *Borough of Duryea, Pa. v. Guarnieri,*__U.S. __, 131 S.Ct. 2488, 2011 WL 2437008, *5 (June 20, 2011), the Supreme Court stated:

> When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If an employee does not speak as a citizen, or does not address a matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Ibid.* Even if an employee does speak as a citizen on a matter of public concern, the employee's speech is not automatically privileged. Courts balance the First Amendment interest of the employee against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

This framework "reconcile[s] the employee's right to engage in speech and the government employer's right to protect its own legitimate interests in performing its mission." *San Diego v. Roe,* 543 U.S. 77, 82, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) *(per curiam).* There are some rights and freedoms so fundamental to liberty that they cannot be bargained away in a contract for public employment. "Our responsibility is to ensure that citizens are not deprived of [these] fundamental rights by virtue of working for the government." *Connick, supra,* at 147; *see also Keyishian v. Board of Regents of Univ. of State of N. Y.,* 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Nevertheless, a citizen who accepts public employment "must accept certain limitations on his or her freedom." *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). The government has a substantial interest in ensuring that all of its operations are efficient and effective. That interest may require broad authority to supervise the conduct of public employees. "When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her." *Waters v. Churchill,* 511 U.S. 661, 675, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion). Restraints are justified by the consensual nature of the employment relationship and by the unique nature of the government's interest.

In *Karchnak v. Swatara Twp.*, 2009 WL 2139280, *15 (M.D. Pa. 7-10-09), the Court stated, "[i]t is clear from [*Reilly v. City of Atlantic City*, 532 F. 3d 216 (2008)] that where a claimant's speech relates to 'specialized knowledge' or 'experience' acquired through the claimant's job that speech falls within the claimant's official duties, and is thus not protected under *Garcetti*." The *Karchnak* Court also stated:

To meet the first prong of the *prima facie* case for retaliation, a statement made by a government employee is protected when: (1) is made by the employee in her capacity as a citizen; (2) the statement involved a matter of public concern; and (3) the government did not have an adequate justification for treating the speaker differently than a member of the general public. *Hill,* 455 F.3d at 242. The landscape for public employees making First Amendment retaliation claims has been significantly altered since the United States Supreme Court's decision in *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). As the United

> States Court of Appeal for the Third Circuit recently observed, " *Garcetti*
> simply 'narrowed the Court's jurisprudence in the area of employee
> speech' by further restricting the speech activity that is protected." *Reilly
> v. City of Atlantic City,* 532 F.3d 216, 228 (3d Cir.2008) (*quoting
> Foraker v. Chaffinch,* 501 F.3d 231, 241 (3d Cir.2007)). After *Garcetti,*
> a court analyzing a public employee's First Amendment retaliation claims
> must first consider whether the employee's speech is made pursuant
> to the employee's official duties. "[T]he First Amendment does not
> prohibit managerial discipline based on an employee's expressions
> made pursuant to official responsibilities." *Garcetti,* 547 U.S. at 424.

*Id.*, * 6.

    In *Moore v. Darlington Twp.*, 690 F. Supp. 2d 378, 388 (W.D. Pa. 2010), the Court
stated:

> As far as speech, in order to pass the first step of the inquiry, Plaintiff
> must show that he "spoke as a citizen on a matter of public concern."
> *Garcetti v. Ceballos,*547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689
> (2006). To do so, he must navigate between the precedential Scylla and
> Charybdis of *Connick* and *Garcetti* by showing both that his speech was
> not on a matter of purely personal interest, *Connick v. Myers,* 461 U.S.
> 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and that it was not made
> pursuant to his official duties, (*Garcetti v. Ceballos,* 547 U.S. 410, 126
> S.Ct. 1951, 164 L.Ed.2d 689 (2006)).

    "The standard for guiding this inquiry is whether the speech in question was made

pursuant to the practically understood or expected duties of a Plaintiff's employment." *Id.* at

389.  "An employee's speech involves a matter of public concern if it is fairly related to political,

social, or other community concerns." *Eddy v. Corbett*, 2009 WL 2982643, *4 (W.D. Pa. 9-14-

09)(citation omitted), affirmed 2010 WL 1999017, 381 Fed.Appx. 237 (3d Cir. 2010)(Non-

Precedential).

    We agree with Plaintiff that she has met the threshold requirement of a retaliation claim

since she has alleged that she spoke both as a citizen and on matters of public concern.  *See*

*Eddy v. Corbett*, 2009 WL 2982643, *4.  Plaintiff also alleges  that she expressed her concerns about the County and about the alleged mismanagement, fraud, and wrongdoing of Defendant Clausi to other people, including reports to the district attorney and state police.  We find that the allegations of Plaintiff in her Amended Complaint demonstrates the protected nature of her speech and the specific speech on which she bases her retaliation claim.  We find the allegations of Plaintiff, detailed above, specifically identifies her speech at issue, including the form, context and content.  We find that Plaintiff alleges she spoke to people who did not work for the County and who were not directly involved in her work at the County.  We also agree with Plaintiff and find, based on her allegations, that her speech was not only made pursuant to her official duties with the County.  Further, we find that Plaintiff's allegations, detailed above, show that her speech did not merely concern matters of private interest and her grievances with Defendant Clausi.  We find that Plaintiff's allegations sufficiently state that, while some of her speech was related to issues involved with her work, other portions of her speech went beyond her official duties with the County.

Also, as stated, Plaintiff alleges  that she not only spoke to persons employed in the County and other state governmental agencies, but to people outside of the County government with no involvement in her work at the County. We concur with Plaintiff, based on her allegations detailed above,  she has stated that her speech, in sufficient measure, related to matters which were of concern to the community.

Thus, as a question of law, we find that Plaintiff's speech has satisfied the "public concern" test.  After the employee demonstrates that her speech involves a mater of public

concern, she must show that her "interest in the speech outweighs the government employer's countervailing interest in providing efficient and effective services to the public." *Curinga v. City of Clairton*, 357 F. 3d 305, 310 (3d Cir. 2004)(citation omitted); *Eddy v. Corbett*, 2009 WL 2982643, *4 .

Since we disagree with Defendants and find that Plaintiff's allegations  sufficiently show that her speech, in part, was made as a citizen and that her speech, in part, addressed matters of public concern, we must utilize the *Pickering* balancing test which also presents a question of law for the court to decide.  *See Schlarp v. Dern*, 610 F. Supp. 2d at 464-65.  Thus, we must determine if Plaintiff's speech was made "under circumstances in which, on balance, [her] interest in speaking outweighs [her] employer's interest in promoting workplace efficiency." *Id.* at  465(citing *Garcetti*, 547 U.S. at 421).  A balance must be met between the interests of Plaintiff, as a citizen, in speaking about matters of public concern and the interest of the County, as an employer, "in promoting the efficiency of the public services it performs through its employees."  *Id*. quoting *Pickering*, 391 U.S. at 568.

In *Eddy v. Corbett*, 2009 WL 2982643, *4, the District Court stated that its "determination of a government-employer's countervailing interest at this initial step requires consideration of whether the employee is a policymaker under the *Elrod/Branti* line of cases. This is because the 'government's interest in appointing politically loyal employees to policymaking positions converges with its interest in running an efficient workplace.'" citing *Curinga v. City of Clairton*, 357 F. 3d 305, 312.  "The ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position ... ."  *Id*. citing *Branti v. Finkel*, 445 U.S.

507 (1980).   The District Court in *Eddy v. Corbett*, 2009 WL 2982643, *5, then stated:

> If, using the teachings of the Supreme Court in *Elrod* and *Branti,*
> this Court finds Eddy to be a policymaker, then the *Pickering/Connick* balancing
> test tips decidedly in the employer's favor. At one end of the spectrum is the Sixth
> Circuit's decision that held as a matter of law that the second step of the
> *Pickering/Connick* balancing test favors the governmental employer "where a
> confidential or policymaking public employee is discharged on the basis of
> speech related to his political or policy views...." *Rose v. Stephens,* 291 F.3d 917
> (6th Cir.2002). Commenting on the Sixth Circuit's decision in *Rose,* the Court of
> Appeals for the Third Circuit was unable to go that far, but stated, "whether or
> not this can be decided as a matter of law, the government's interest in these
> kinds of cases is likely dispositive." *Curinga v. City of Clairton,* 357 F.3d at 312 n.
> 5.

We agree entirely with Plaintiff that her speech about alleged waste, mismanagement and

wrongdoing in the County was protected under the First Amendment.  *Id*. at 466 ("[Plaintiff's]

filing formal grievances constituted activity protected under the First Amendment ... .").

The Court in *Borough of Duryea, Pa. v. Guarnieri,* 2011 WL 2437008, *13 , then stated:

> The framework used to govern Speech Clause claims by public employees, when
> applied to the Petition Clause, will protect both the interests of the government
> and the First Amendment right. If a public employee petitions
> as an employee on a matter of purely private concern, the employee's First
> Amendment interest must give way, as it does in speech cases. *Roe,* 543 U.S., at
> 82–83. When a public employee petitions as a citizen on a matter of
> public concern, the employee's First Amendment interest must be balanced against
> the countervailing interest of the government in the effective and efficient
> management of its internal affairs. *Pickering, supra,* at 568. If that balance favors
> the public employee, the employee's First Amendment claim will be sustained. If
> the interference with the government's operations is such that the balance favors
> the employer, the employee's First Amendment claim will fail even though the
> petition is on a matter of public concern.
> As under the Speech Clause, whether an employee's petition relates to a matter of
> public concern will depend on "the content, form, and context of [the petition], as
> revealed by the whole record." *Connick,* 461 U.S., at 147–148, and n. 7. The
> forum in which a petition is lodged will be relevant

to the determination of whether the petition relates to a matter of public concern. *See Snyder v. Phelps,* 562 U.S. ——, —— (2011) (slip op., at 8–9).

We find that Plaintiff's retaliation claim meets the first two elements of the *Garcetti-Connick-Pickering* analysis. We find that at this stage of the case, it is premature to determine if Plaintiff's retaliation claim can surmount the third element of the *Garcetti-Connick-Pickering* analysis,  that is, under the *Pickering* balancing test, if Plaintiff's interest in proposing the Code of Civility is outweighed by the County's  countervailing interest as an employer in promoting workplace efficiency and avoiding workplace disruption.[2]

Accordingly, we will recommend that Defendants' Motion to Dismiss be denied with respect to Count I of Plaintiff's Amended Complaint, *i.e.* her First Amendment retaliation claim against Clausi and Phillips brought under §1983.

2. *Fourteenth Amendment Due Process Claim, Count II*

Plaintiff claims that in Count II she has now sufficiently pled a viable Fourteenth Amendment due process claim against all three Defendants for a violation of her liberty interest in reputation because she has amended her pleading by averring that Defendants "created and

_____

[2]We note that government attorneys, such as our Plaintiff, occupy positions for which, in *Pickering*'s words, "personal loyalty and confidence" and "close working relationships" are "necessary to their proper functioning." We also note that if Plaintiff, in her position with the County as an assistant solicitor and chief clerk, occupied a sensitive, confidential "policymaking" position, which was exempt from the *Elrod/Branti* rule, then when such employees publicly challenge the integrity or judgment of their superiors, the *Pickering* balance almost invariably favors the government.   *See Eddy v. Corbett*, 2010 WL 1999017 (3d Cir. 2010)(Non-Precedential); *Tomalis v.Office of PA Attorney General*, 45 Fed.Appx. 139 (3d Cir. 2002)(Non-Precedential).   However, we find that these issues as well as the third element of the *Garcetti-Connick-Pickering* analysis are more appropriately addressed after discovery *via* a summary judgment motion.

disseminated false defamatory impressions about Plaintiff in connection with her termination, including that she was engaging in sexual relations with Attorney Timothy Bowers on county time." (Doc. 32, p. 8 & Doc. 22, ¶ 36).   Plaintiff states in her brief that "Defendant Clausi repeatedly told other County Commissioners and County department heads that [she] was engaging in sexual relations with another attorney on County time." (Doc. 32, p. 8).     Plaintiff argues that she has now fulfilled the "stigma plus test" as outlined in *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006).  Plaintiff states that Defendants publicly made the defamatory statements about her, that  the stigma was the creation and dissemination of false statements regarding her, and that the plus was her termination.  Thus, Plaintiff contends that her Amended Complaint satisfies the stigma plus test, and that it states a viable due process claim.  (Doc. 32, p. 8).

Defendants assert in their Motion to Dismiss and their brief that Count II of the Amended Complaint should be dismissed because Plaintiff did not allege the statements allegedly published by all Defendants that were stigmatizing to the liberty interest in reputation that Plaintiff asserts under the Fourteenth Amendment.  Defendants also contend that Count II should be dismissed because the statements regarding Plaintiff's sexual relations with Attorney Bowers, even if spoken, were not published to the public as a reason for her termination. (Doc. 31, pp. 18-20).   Further, Defendants contend that Plaintiff's allegations regarding the other statements are not stigmatizing to Plaintiff's liberty interest in reputation.

The District Court, in its November 30, 2011 Memorandum issued in this case, Doc. 21, pp. 7-8, cited to the Third Circuit Court in *Hill* which held that "to make out a due process claim

for deprivation of a liberty interest in reputation a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006).[3]   Plaintiff contends in her brief in opposition to the Defendants' Motion to Dismiss, that her Fourteenth Amendment claim now fulfills this stigma-plus test, since the Court in *Hill* accepted creation and dissemination of false and defamatory statements as a stigma and termination as a plus.  The *Hill* Court held that to satisfy the stigma prong of the test, Plaintiff must allege that the statements were made publicly and that statements were false.  *Id.*

While Plaintiff does allege that statements made by Defendants were false, she does not allege, in her Amended Complaint, that the statements were made publicly, only that "Defendant Clausi stated to various news media that Plaintiff should resign and that he would seek Plaintiff's termination." (Doc. 22, ¶ 37).  Plaintiff points out in her brief in opposition to Defendants' Motion to Dismiss that she has alleged "Defendant Clausi repeatedly informed the  other County Commissioners and Northumberland County department heads that Plaintiff was engaging in sexual relations with Attorney Timothy Bowers on county time." (Doc. 22, ¶ 19 & Doc. 32, pg. 8). Plaintiff insists that under a motion to dismiss standard that the court must accept her allegations as true and make all reasonable inferences that can be drawn therefrom as Plaintiff is the non-moving party.  In other words, Plaintiff insists that the court make the inference that because Defendant  Commissioner Clausi told other County Commissioners and department heads the defamatory information that it must have also reached the public in this manner.

---

[3]*See also* 2011 WL 6003853 (M.D. Pa. 11-30-11).

We agree with Defendants that even if Plaintiff has alleged that they made false and defamatory statements about her insofar as she alleges that they told other County department heads that she was engaging in sexual relations with Attorney Timothy Bowers on county time, Plaintiff has again failed to satisfy the stigma prong of a due process claim "because such allegations were neither connected to her termination, nor published to the general public." (Doc. 32, p. 18).  Defendants correctly cite to ¶ 27 of Plaintiff's Amended Complaint (Doc. 22) in which Plaintiff specifically averred that "Defendants cited to the following reasons for [her] termination: failing to have verbal communication with Defendant Clausi after she made the police complaint, poor legal advice over a matter involving the sale of county owned land, and raising the proposed code of civility at a public meeting."  As Defendants correctly state, "[n]otably absent in [¶ 27 of Plaintiff's Amended Complaint] is a claim that Plaintiff's alleged relationship with Timothy Bowers had any impact in the County's decision to terminate her employment."  (Doc. 31, p. 18).

As this Court stated in its November 30, 2011 Memorandum issued in this case, Doc. 21, p. 8, "[t]o satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements (1) were made publicly and (2) were false." (Citing to *Hill v. Borough of Kutztown*, 455 F.3d at 236).  We find that Plaintiff has failed to satisfy the stigma prong of a due process claim because her above stated allegations about the relationship with Timothy Bowers were not connected to her termination, and the comments were not published to the general public. Therefore, we find that Plaintiff has failed to satisfy the stigma prong of her due process claim in her Amended Complaint and we will recommend that Defendants' Motion to Dismiss be granted

with respect to Count II.  We will also recommend that Count II be dismissed with prejudice since

Plaintiff has already had an opportunity to amend her pleading, since we find futility in allowing

Plaintiff to file a second amended complaint regarding her due process claims, and since we find

undue prejudice to Defendants if she is granted further leave to amend her due process claim.

The Third Circuit has held that a Plaintiff whose Complaint fails to state a cognizable claim is

entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.

See *Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002);  *Alston v. Parker*, 363

F.3d 229, 235-236 (3d Cir. 2004).

   *3. Equal Pay Act of 1963, Count III*

   Plaintiff argues that in Count III she has pled a viable claim pursuant to 29 U.S.C. §206(d)

against Defendants under the Equal Pay Act of 1963.  In  Count III of her Amended Complaint,

Plaintiff averred that she:

> shared the following common tasks in her positions with that of
> [HR] Director Joe Picarelli: general staff/employee supervision,
> training, formulation of county employee policy, preparation,
> documentation, attendance of UC hearings,
> employer/employee relations, structuring staff and budget for
> county departments, and being the Commissioners' confidential
> assistant and adviser.

(Doc. 22, pp. 7-8, ¶ 44).

   Plaintiff further alleges that she and Human Relations ("HR")  Director Picarelli made a

raise request because they were both working over 40 hours per week and that Picarelli received

an $8,000 raise while she only received a cost of living increase.  (Id., ¶ 45).  Plaintiff asserts that

Defendants hired two men to replace her and paid them collectively a higher annual salary for

fewer hours of work than the Defendants paid her.  (*Id.*, ¶ 46).

The District Court, in its November 30, 2011 Memorandum issued in this case, Doc. 21, pp. 9-10, stated as follows:

> The Equal Pay Act prohibits employers from discriminating "between employees on the basis ofsex by paying wages to employees . . . at a rate less than the rate at which [they] pay[] wages toemployees of the opposite sex . . . for equal work." 29 U.S.C. § 206(d)(1). Claims based on theEqual Pay Act follow a two-step burden-shifting approach: "[t]he plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing 'equal work' – work of substantially equal skill, effort and responsibility, under similar working conditions." Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000). After the plaintiff establishes a prima facie case, "[t]he burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act." Id. Thus, the Equal Pay Act "prohibits differential pay for men and women when performing equal work 'except when such payment is made pursuant to' one of the four affirmative defenses." *Id*. (quoting 29 U.S.C. § 206(d)(1)).

We agree entirely with Defendants (Doc. 31, pp. 21-22) that Plaintiff has failed to correct the errors detailed by the District Court (Doc. 21, pp. 10-11) when it dismissed Plaintiff 's EPA claim from her original Complaint.  Defendants argue that upon dismissing the original Complaint, the District Court stated that "Plaintiff does not allege in her complaint that Picarelli earned more than she, either before or after the County granted his raise request." (Doc. 31, p. 21 & Doc. 21, p. 11) (quoting *Best v. County of Northumberland*, Civil No. 4:11-CV-00896,  2011 WL 6003853 (M.D. Pa. Nov. 30, 2011).   In fact, as Defendants point out, Plaintiff now admits in her Amended Complaint that she received a pay raise in the form of a cost of living increase when HR Director Picarelli did.  Thus, as Defendants state, "Plaintiff has not sufficiently alleged that Mr. Picarelli, her purported male comparator, earned more than her while both were employed by the County."

(Doc. 31, p. 21).  Further, as Defendants correctly state, while Plaintiff again alleges that Defendants hired two men to replace her and paid them collectively a higher annual salary for fewer hours of work than the Defendants paid her (Doc. 22, ¶ 46), the District Court, upon dismissing Plaintiff 's original Complaint, stated that "the simple fact that two individuals [Steffen and Rosini]  were hired to replace [Plaintiff] distinguishes the circumstances and working conditions of their employment from that of Plaintiff's." (Doc. 31, p. 22 & Doc. 21, p. 11).

Thus, we will recommend that Defendants' Motion to Dismiss be granted with respect to Count III of Plaintiff 's Amended Complaint, EPA claim.  We will also recommend that Count III be dismissed with prejudice since Plaintiff has already had an opportunity to amend her pleading, since we find futility in allowing Plaintiff to file a second amended complaint regarding her EPA claim and, since we find undue prejudice to Defendants if she is granted further leave to amend her due process claim.  The Third Circuit has held that a Plaintiff whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

*4. Conspiracy Claim under §1985(3), Count IV*

Plaintiff alleges in Count IV of her Amended Complaint that Defendants Clausi and Phillips conspired to deprive her of her Constitutional Rights by agreeing to terminate her because she is female. In Count IV of her Amended Complaint, Plaintiff alleges that Defendants Clausi and Phillips had closed door meetings regarding her employment and that they acted together by voting for Plaintiff's termination.  Plaintiff alleges that these actions serve as proof that Defendants

31

Clausi and Phillips conspired to terminate her.

Plaintiff argues that she has alleged sufficient facts to support her claim of conspiracy under 42 U.S.C. §1985(3). Plaintiff states that Defendants "Held closed meetings communicating with each other concerning terminating Plaintiff prior to actually firing her, and they approached Gary Steffen to take over Plaintiff 's chief clerk position prior to actually terminating Plaintiff." (Doc. 32, p. 11). Plaintiff states that she alleged that Defendants Clausi and Phillips "acted together in voting to terminate her due to an impermissible discriminatory animus against the female Plaintiff." Plaintiff further states that Defendants fired her, and "that Defendants also jointly defamed Plaintiff, thereby injuring her and furthering their conspiracy." (Doc. 32, p. 11).

Defendants ague that Plaintiff has again failed to sufficiently allege the facts required to state a conspiracy claim, under 42 U.S.C. §1985(3), to fire her because she was a female. Defendants contend that Count IV of the Amended Complaint should be dismissed because even if they "deliberated about terminating Plaintiff before they acted is insufficient to prove a federal conspiracy." (Doc. 31, p. 23). Defendants cite to *Rife v. Borough of Dauphin*, 647 F.Supp.2d 431, 450 (M.D. Pa. 2009), for the proposition that "[t]he mere fact that Defendants may have deliberated about whether to suspend Plaintiff is insufficient to state a claim under §1985." Defendants conclude that Plaintiff 's §1985 conspiracy claim should again be dismissed since it "contains only conclusory allegations unsupported with underlying material facts." (Doc. 31, pp. 23-24). We agree with Defendants.

In a §1985 conspiracy claim, as Defendants correctly state, Plaintiff must allege:

> (1) there was a conspiracy by [the Defendants] designed to deprive [her] of [her] federally protected rights; (2) Defendants

> committed an overt act in furtherance of that conspiracy; (3)
> Plaintiff's rights were violated as a result of this action; and (4)
> Defendants' actions were motivated by racial or otherwise class-
> based invidiously discriminatory animus.

(Doc. 31, p. 22) (quoting *Taylor v. JFC Staffing Assoc.*, 690 F. Supp. 2d 357, 373 (M.D. Pa.

2009)(citation omitted)).

Defendants also argue that Plaintiff does not allege in her Amended Complaint that

Defendant Phillips had animus toward her because she was female and, that Plaintiff does not

allege "Defendant Phillips had knowledge of Defendant Clausi's treatment of Plaintiff prior to her

termination." (Doc. 31, p. 23).

In *Brookhart v. Rohr*, 385 Fed. Appx. 67, 70 (3d Cir. 2010)(Per Curiam) , the Court

stated:

> Section 1985(3) of title 42 requires a plaintiff to allege that invidious racial
> or otherwise class-based discriminatory animus lay behind the defendants'
> actions, and he must set forth facts from which a conspiratorial agreement
> between the defendants can be inferred. *See Bray v. Alexandria Women's
> Health Clinic,* 506 U.S. 263, 267-68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).
> Brookhart did not allege that he was a member of a protected class, and his
> conclusory allegations of a deprivation of his constitutional rights are
> insufficient to state a section 1985(3) claim.

In *Roach v. Marrow*, 2009 WL 3103781, *5 (M.D. Pa. 9-24-09), the Court stated:

> The requirements for establishing a cause of action under 42 U.S.C.
> § 1985(3) are set forth in a line of Supreme Court cases beginning with the
> decision in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d
> 338 (1971). There, the Supreme Court clarified that the reach of section
> 1985(3) is limited to private conspiracies predicated on "racial, or perhaps
> otherwise class based, invidiously discriminatory animus." *Id.* at 102, 91 S.Ct.
> at 1798. The Court strictly construed the requirement of class-based invidious
> animus in *United Brotherhood of Carpenters and Joiners of America, Local*

33

> *610 v. Scott,* 436 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), finding
> that commercial and economic animus could not form the basis for a section
> 1985(3) claim.
> *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997). Consistent with these
> decisions, a plaintiff must allege the following elements in order to state
> a claim pursuant to 42 U.S.C. § 1985(3):
> (1) a conspiracy; (2) motivated by a racial or class based discriminatory
> animus designed to deprive, directly or indirectly, any person or class of
> persons to the equal protection of the laws;
> (3) an act in furtherance of the conspiracy;
> and (4) an injury to person or property or the deprivation of any right or
> privilege of a citizen of the United States.

*Id.*

Thus, "it is not enough that a Plaintiff falls within a class entitled to sue under §1985(3).

Instead, the complaint must allege that Defendants have engaged in invidious discrimination

against the protected class and that the invidious discrimination has caused the Plaintiff injury."

*Roach v. Marrow*, 2009 WL 3103781, *6 citing *Majewski v. Luzerne County*, 2007 WL 1074769

(M.D. Pa. 4-9-07); *Goodson v. Maggi*, 2010 WL 1006901, *6("[M]ere conclusory allegations of

deprivations of constitutional rights are insufficient to state a §1985(3) claim.")(citation omitted);

*Patterson v. City of Philadelphia*, 2009 WL 1259968, *4 (E.D. Pa. 5-1-09)("Animus against an

individual is not sufficient; animus must be class-based.")(citations omitted).

We agree with Defendants and find that Plaintiff again does not allege the necessary facts

to state a conspiracy existed between Clausi and Phillips to terminate her because she was a

female.  In *Taylor*, the Court held that "in order to prove the existence of a civil conspiracy,

Taylor must show that the conspirators agreed to inflict upon him; in other words, that they

acted with a single plan, the general nature and scope of which was known to each conspirator."

*Taylor*, 690 F. Supp. 2d at 374.  The *Taylor* Court further held that "[t]he mere fact that

Defendants may have deliberated about whether to terminate Taylor is insufficient to state a claim under § 1985." *Id.*

Based on Plaintiff's allegations, Defendants Clausi and Phillips merely deliberated and voted on Plaintiff's termination; which was the subject of the closed meetings Plaintiff alleges Defendants participated in.  Plaintiff does not allege any facts that suggest the Defendants worked from a common plan to have her fired due to her gender.  Thus, Plaintiff does not allege any conspiracy which  "was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Patterson*, 440 F. 3d 131, 135 (3d Cir. 2006).

Therefore, we will recommend that Plaintiff's claim against Defendants Clausi and Phillips under §1985(3) conspiracy claim be dismissed with prejudice.  Based upon the above, we find that the Court should not allow Plaintiff to again amend her pleading with respect to her §1985(3) claim  against Defendants, and we find that there is futility and undue prejudice to Defendants if Plaintiff is allowed to amend her stated claim.  *See Grayson v. Mayview State Hospital*, 293 F.3d at 111.

   5. *Pennsylvania Whistleblower Law*

   In its November 30, 2011 Memorandum, the District Court did not consider whether Plaintiff 's PA Whistleblower Law ("PWL") claim in her original Complaint stated a claim since it found Plaintiff failed to state a viable federal claim.  (Doc. 21, p. 13).  The Court declined to exercise pendent jurisdiction over Plaintiff 's state law Whistleblower claim under 43 P.S.A. §1421, *et seq.   See* 28 U.S.C. §1367(c)(3);  *McKnight v. Baker*, 415 F.Supp. 2d 559, 564-65 (E.D.

Pa. 2006), affirmed, 244 Fed.Appx. 442 (3d Cir. 2007)(Court declined to exercise jurisdiction over Plaintiff's state law claims since it was entering judgment against Plaintiff on all of his federal claims).   The Court stated that it would reevaluate Plaintiff 's PA Whistleblower Law claim if she successfully amended her Complaint.

In Count V of her Amended Complaint, Plaintiff alleges that she was an employee for the purposes of the Whistleblower Law, that she witnessed/had evidence of the wrongdoing of Defendant Clausi regarding the deficient air quality test, the dangerous condition of the glass dome, and that she was a victim of Defendant Clausi's harassment, intimidation, and discrimination.    Plaintiff asserts her PWL claim against all three Defendants.

Plaintiff argues that Count V of her Amended Complaint is viable because she has pled a good faith report of wrongdoing or waste related to her termination under PWL, 43 Pa.C.S.A.  §§ 1421-1428.  Plaintiff alleges that her reports of deficient air quality test, danger from the glass dome, and harassment were reports of wrongdoing or waste and, that she reported these incidents to multiple individuals.  Plaintiff further avers that the air quality test report as well as the dome report were "good faith reports made without consideration of Plaintiffs' (sic) personal benefit." (Doc. 32, p. 12).   Regarding the harassment report, Plaintiff contends that:

> although Plaintiff could have potentially benefitted in some sense from reporting Clausi's harassment of her and other women, her reports of all instances of his conduct also inevitably focused his wrath upon her, making it against her personal benefit to make the reports.

*(Id.)*.

36

Therefore, Plaintiff asserts all three reports were made in good faith without consideration of her personal benefit.  Plaintiff also claims that the ongoing course of conduct from Defendant Clausi was enough to make a casual connection between Plaintiff making the reports and Plaintiff being terminated because the actions began when Plaintiff made the reports and ended only when she was terminated.

Defendants argue that Count V of Plaintiff's Amended Complaint should be dismissed because  Plaintiff failed to plead facts establishing a PWL claim. Defendants contend that claims regarding Defendant Clausi's alleged harassment were for Plaintiff's own self-benefit and the alleged whistleblowing activity occurred well before (*i.e.* 5 months) Plaintiff was terminated and therefore is not proximately related to Plaintiff's termination.

Defendants claim that Plaintiff cannot sustain a PWL claim, as alleged in Count V, because "all whistleblowing activities listed in the Amended Complaint were made solely for Plaintiff's own personal benefit and/or were not proximately related to her termination." (Doc. 31, p. 24).  Defendants state that according to 43 Pa. Cons. Stat. §1422,  the reports cannot be made in consideration of personal benefit and that Plaintiff's reports were all for her own personal benefit, specifically the allegations regarding Defendant Clausi's harassment. Defendants state that since this alleged harassment was not claimed specifically on the part of any other female in the office of Plaintiff, the reports therefore were made solely for Plaintiff's benefit.  Further, Defendants state that the passage of five (5) months between Plaintiff's reports about the air quality in the building and the condition of the courthouse glass dome makes them too far removed to be related to Plaintiff's termination.

Regarding the casual connection between the Plaintiff's reports and her subsequent termination, the Court in *Mosley* stated:

> [i]n order to establish a casual connection under the Whistleblower Law, the employee must 'show by concrete facts or surrounding circumstances that the report led to [his] dismissal, such as that there was specific direction or information [he] received not to file the report or there would be adverse consequences because the report was filed.

*Mosley v. Pittsburg Pub. Sch. Dist.*, 702 F. Supp. 2d 561, 586-87 (W.D. Pa. 2009) (quoting *Gray v. Hafer*, 168 Pa. Commw. 613, 551 (Pa. Commw. Ct. 1994).

Given Plaintiff's allegations regarding Defendant Clausi's behavior after she filed the reports about the air quality in the building and the disrepair of the glass dome, these reports are covered under the Whistleblower Law, as the negative behavior began after Plaintiff filed the report up until her termination.  Further, we do not agree with Defendants that these events are too far removed from the Plaintiff's termination; it is evident that from the time Plaintiff made this report until the time of Plaintiff's termination that Defendant Clausi exhibited negative behavior towards Plaintiff as a result of the reports.  However, as Defendants have stated, Plaintiff's allegations of harassment only concern herself and Plaintiff did not mention any other females in the office who had been sexually harassed.  Further, the air quality and glass dome issues are obviously issues that negatively affect the public; the harassment claim is very personal to Plaintiff.

For the above reasons, we will recommend that the harassment portion of Plaintiff's PWL claim be dismissed with prejudice, and that portion of Plaintiff's PWL claim regarding the reports

about  the glass dome and the air quality be allowed to proceed.

> 6. *Wrongful Termination Claim*, *Count VI*

Plaintiff has stated in her Brief that she will voluntarily dismiss Count VI of her Amended

Complaint alleging wrongfully termination because "some Pennsylvania Courts have held that

County Commissioners are immune from suit on state causes of action as high public officials."

Plaintiff also states that claims against a municipality for common law wrongful discharge do not

fall within any exceptions to sovereign immunity under the PA Political Subdivision Tort Claims

Act.  (Doc. 32, p. 13).   Thus, we will recommend that Defendants' Doc. 26 Motion be granted

with respect to Count VI of Plaintiff 's Amended Complaint, and that Count VI be dismissed with

prejudice.   We find futility and undue prejudice to Defendants to allow Plaintiff leave to file a

third amended pleading with respect to her Count VI claim.   *See Grayson, supra;  Alston, supra*.

> 7. *Claims for Punitive Damages*

In her Amended Complaint, Doc. 22, Plaintiff seeks punitive damages against Defendants

Clausi and Phillips in Counts I and IV, and she seeks punitive damages against all three

Defendants in Count II.   Plaintiff did not assert a claim for punitive damages against Defendants

under the Equal Pay Act, Count III.   Nor did Plaintiff assert a claim for punitive damages against

Defendants under Count V, the PA Whistleblower Law.  Plaintiff voluntarily concurs with the

dismissal of Count VI.   As discussed above, we will recommend that Counts II, III and IV be

dismissed with prejudice.

In her Amended Complaint, Plaintiff sues the two Commissioner Defendants, Clausi and

Phillips, in both their individual and personal capacities.  (Doc. 22, p. 1). Plaintiff cannot obtain

money damages against these Defendants in their official capacities.   We find that, insofar as Plaintiff seeks compensatory damages against Defendants Clausi and Phillips, she can only sue these Defendants  in their individual or personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010). Thus, we will recommend that Plaintiff's claims for compensatory damages against Defendants Clausi and Phillips in their official capacities be dismissed with prejudice without leave to amend. Based upon well-settled case law, we find it would be futile to allow Plaintiff to amend her Amended Complaint to seek compensatory damages against Defendants Clausi and Phillips in their official capacities.  *See Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010);*Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

Plaintiff also cannot seek punitive damages as against Defendants Clausi and Phillips in their official capacities.  Defendants correctly argue that Plaintiff's claims for punitive damages against  Defendants Clausi and Phillips in their official capacities should be dismissed. Defendants state that suing a municipal officer for punitive damages  in his official capacity is the same as suing the municipality and punitive damages against a municipality are not recoverable under § 1983 and §1985. Therefore, Plaintiff can only seek punitive damages as against Defendants Clausi and Phillips in their individual or personal capacities.  *See Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625 (1983).  Thus, Plaintiff's claims for punitive damages against Defendants Clausi and Phillips in their official capacities should be dismissed with prejudice and without leave to amend.  We find it would be futile to allow Plaintiff to amend her Amended Complaint to seek punitive damages against Defendants Clausi and Phillips  in their official capacities.  *See*

40

*Van Tassel v. Lawrence County Domestic Relations Section,* 659 F.Supp.2d 672, 696 (W.D. Pa. 2009).

Also, as indicated, Plaintiff cannot obtain punitive damages against Defendant Northumberland County in this §1983 action.  Plaintiff seeks punitive damages against Defendant Northumberland County in Count II of her Amended Complaint, *i.e.* her Fourteenth Amendment due process claim. As Plaintiff now recognizes (Doc. 32, p. 14) and as Defendants correctly assert (Doc. 31, pp. 28-29), the Supreme Court has determined that, absent a statute to the contrary,  punitive damages cannot be awarded against a government entity in a §1983 action. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748 (1981); *Pirino v. Scranton Police Dept.*, 2005 WL 3006983, *4 (M.D. Pa. 11-9-05)("A municipality may not be held liable for punitive damages under §1983")(citation omitted).  Thus, Plaintiff's claims for punitive damages against Defendant Northumberland County should be dismissed with prejudice.  We find it would be futile to allow Plaintiff to amend her Amended Complaint to seek punitive damages against Defendant Northumberland County.[4]    *See City of Newport, supra*.

Plaintiff argues that she has made proper claims for punitive damages against Defendants Clausi and Phillips, in their individual capacities,  in Counts I, II, and IV.  Plaintiff contends that under Counts I, II, and IV,  punitive damages may be awarded against public officials in their

_____

[4]While we will recommend that Count II be dismissed with prejudice as against all three Defendants, in the event the Court does not agree, we also recommend that Plaintiff's claims for punitive damages against Defendant Northumberland County in Count II be dismissed with prejudice.

41

individual capacities in a § 1983 case when defendants have acted with "'reckless or callous disregard of, or indifference to, the rights and safety of others.'" (Doc. 32, p. 14)(citing *Keenan v. Philadelphia*, 983 F.2d 459, 469-70 (3d Cir. 1992)).   Plaintiff correctly states that she did not assert a claim for punitive damages in her Amended Complaint under the Equal Pay Act, Count III. Further, Plaintiff states that she did not assert a claim for punitive damages under Count V, her claim under the Whistleblower Act. (*Id.*).

We now address Plaintiff's claims for  punitive damages against Defendants Clausi and Phillips, in their individual capacities, under Counts I, II, and IV.  Counts I and II are Plaintiff's Constitutional Claims under §1983 for violations of her First and Fourteenth Amendment rights, respectively.   Count IV is Plaintiff 's §1985(3) conspiracy claim.  Counts I and IV are asserted only against Defendants Clausi and Phillips.  Count II is asserted against all three Defendants, however, as discussed above, Plaintiff cannot seek punitive damages against Defendant Northumberland County. In her Amended Complaint, Plaintiff sues both Defendants Clausi and Phillips in their official and individual capacities and, she does not specify for each Count of her pleading  whether she is suing neither Clausi nor Phillips in his official or individual capacity. However, in her brief, Plaintiff correctly states that she seeks punitive damages against Defendants Clausi and Phillips only in their individual capacities and not in their official capacities.

First, it is well-stated law that Plaintiff may sue Defendants Clausi and Phillips in their individual capacities for punitive damages with respect to a claim under §1983. *See Agresta v. Goode,* 797 F. Supp. 399, 410 (E.D. Pa. 1992).  The Third Circuit has also stated that:

> punitive damages in general represent a limited remedy, to be
> reserved for special circumstances.  Despite its utility as a deterrent,
> the punitive damage remedy must be reserved, we think for cases in
> which the defendant's conduct amounts to something more than a
> bare violation justifying compensatory damages or injunctive relief.

*Keenan v. Philadephia*, 983 F.2d 459, 470 (3$^d$ Cir. 1992) (citing *Cochetti v. Desmond*, 572 F.2d

102, 105-106 (3d Cir. 1978)).

The *Cochetti* Court set out requirements for the defendant's conduct to justify punitive

damages, namely, "that the defendant acted with actual knowledge that he was violating a

federally protected right or with reckless disregard of whether he was doing so." *Cochetti*, 572 F.2d

at 106.

As discussed above, we will recommend  that Counts II and IV against Defendants be

dismissed as they do not properly allege a violation of Plaintiff 's due process rights under the

Fourteenth Amendment and a §1985(3) conspiracy claim.   Thus, regarding Counts II and IV, since

we find that Plaintiff has not properly stated a Fourteenth Amendment due process claim and a

conspiracy claim, we do not address Plaintiff's request for punitive damages as against Defendants

Clausi and Phillips in their individual capacities  in these Counts.

With respect to Count I, Plaintiff's First Amendment retaliation claim, we find that Plaintiff

has sufficiently alleged that Defendants Clausi and Phillips had actual knowledge that they were

violating her right to free speech for proposing the Code of Civility at the Commissioners' meeting.

Therefore, based on our above discussion, we find that Plaintiff has properly asserted a punitive

damage claim with respect to  her First Amendment retaliation claim against Defendants Clausi

and Phillips in their individual capacities.

43

## VI.  Recommendation.

Based on the foregoing, we respectfully recommend that Defendants' **Doc. 26** Motion to Dismiss the Amended Complaint  be granted, in part, and denied, in part.  We recommend that Defendants' Motion to Dismiss be denied with respect to Count I of Plaintiff's Amended Complaint, *i.e.* her First Amendment retaliation claim against Clausi and Phillips brought under §1983.   We recommend that Defendants' Motion to Dismiss be granted with respect to Count II of Plaintiff s Amended Complaint, her Fourteenth Amendment due process claim, and we recommend that Count II be dismissed with prejudice.   We recommend that Plaintiff's conspiracy claim against Defendants Clausi and Phillips under §1985(3),  Count IV of Plaintiff's Amended Complaint,  be dismissed with prejudice.  We recommend that Defendants' Motion to Dismiss be granted with respect to Count III of Plaintiff's Amended Complaint, EPA claim, and that Count III be dismissed with prejudice.    We recommend that Defendants' Doc. 26 Motion be granted with respect to Count VI of Plaintiff's Amended Complaint, and that Count VI be dismissed with prejudice. We recommend that the harassment portion of Plaintiff's PWL claim, Count V,  be dismissed with prejudice, and that portion of Plaintiff's PWL claim regarding the reports about the glass dome and the air quality be allowed to proceed as against all three Defendants.

Further, we recommend that Plaintiff's claims for compensatory and punitive damages against Defendants Clausi and Phillips in their official capacities be dismissed with prejudice.  We recommend that Plaintiff's claims for punitive damages against Defendant Northumberland County be dismissed with prejudice.  We recommend that Plaintiff be allowed to proceed with her compensatory damage claim and her punitive damage claim against Defendants Clausi and Phillips

in their individual capacities with respect to her First Amendment retaliation claim, Count I.

Finally, we recommend that Plaintiff's case be remanded to the undersigned for further proceedings.


　　　　　　　　　 s/ Thomas M. Blewitt　

　　　　　　　　THOMAS M. BLEWITT
　　　　　　　　United States Magistrate Judge


**Dated: June 29 , 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYMBERLEY BEST, | : | CIVIL ACTION NO. **4:CV-11-0886** |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| COUNTY OF | : | |
| NORTHUMBERLAND, *et al.*, | : | |
| | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 29 , 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


Failure to file timely objections to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.


                                           **s/ Thomas M. Blewitt**
                                       **THOMAS M. BLEWITT**
                               **United States Magistrate Judge**


**Dated: June 29, 2012**